UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFFREY ALLEN ROETGER,

    Petitioner,

v.

RON HAYNES,

    Respondent.

CASE NO. 3:18-CV-05870-RBL-DWC

REPORT AND RECOMMENDATION

Noting Date: September 20, 2019

The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner Jeffrey Allen Roetger filed his federal habeas Petition, pursuant to 28 U.S.C. § 2254, seeking relief from his state court convictions and sentence. *See* Dkt. 19. The Court concludes the state court's adjudication of the two grounds raised in the Petition was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, the undersigned recommends the Petition be denied and a certificate of appealability not be issued.

**I.    Background**

A. <u>Factual Background</u>

The Court of Appeals of the State of Washington ("state court of appeals") summarized the facts of Petitioner's case as follows:

    Mr. Roetger and Kristine Roetger met in June 2001 and were married in June 2006. A.K. was 10 when her mother and Mr. Roetger married and her best friend

| | |
|---|---|
| 1 | was A.C. They spent significant time at each other's houses and often had sleepovers. The pair later drifted apart as they entered junior high school. |
| 2 | |
| 3 | A.K. described a long history of abuse by Mr. Roetger. When A.K. was in the fourth grade, she remembers him touching her breasts over her clothes. On one occasion that year, Mr. Roetger held her down in his bedroom and touched her with his penis. A.K. also reported that when she was 12 years old, Mr. Roetger would come into her room and touch her over and under her clothes. A.K. described a specific incident where Mr. Roetger took her to the warehouse where he worked and touched her vagina with both his fingers and his penis. A.K. also recalled when she was 12 years old, Mr. Roetger entered her vagina with his penis. A.K. described Mr. Roetger putting his fingers inside her vagina and holding her down and using his mouth to touch her vagina. |

A.K.'s friend, A.C., detailed an incident where she went with the Roetgers to Ocean Shores and Mr. Roetger took her into the deep end of the hotel pool to teach her how to swim. While in the pool, Mr. Roetger touched her vagina over her bathing suit. A.C. was 10 years old at the time. A.C. went to Wild Waves Theme Park with the Roetgers, where Mr. Roetger again touched her vagina over her bathing suit. A.C. described a time in fifth grade when she and A.K. were at Mr. Roetger's work and Mr. Roetger asked the girls to lift their shirts. That same year, A.C. recalled riding on Mr. Roetger's lap while he drove his car, and Mr. Roetger rubbed her leg and breasts while she was on his lap. A.C. witnessed Mr. Roetger doing the same to A.K. A.C. testified that in the time she knew Mr. Roetger, he touched her breasts and vagina about five times over her clothing.

Neither A.K. nor A.C. initially reported these incidents. A.C. testified she was embarrassed, scared, and did not think anyone would believe her because Mr. Roetger told her no one would. A.K. similarly related she was too scared to say anything because Mr. Roetger told her not to tell anyone. Two to three years later, and after the girls were no longer close friends, A.C.'s mother overheard a conversation between A.C. and two other friends. Later, A.C.'s mother asked her about the conversation and A.C. confided in her mother, "That [A.K.] had been raped" and then told her mother several instances where Mr[.] Roetger had touched her inappropriately. Report of Proceedings (RP) at 152. A.C. told her mother she had witnessed Mr. Roetger inappropriately touch A.K. A.C.'s mother immediately reported the abuse and called A.K.'s mother. A.K.'s mother did not believe the allegations; A.K. moved in with her father.

The State charged Mr[.] Roetger with three counts of first degree rape of a child as to A.K., one count of first degree child molestation as to A.K., one count of first degree child molestation as to A.C., one count of second degree rape of a child as to A.K., and one count of third degree rape of a child as to A.K.

Before trial, the State moved to exclude alleged past sexual abuse of A.K. by another family member as not probative and unfairly prejudicial. The trial court

noted the case did not fall under the Rape Shield Statute, RCW 9A.44.202, but determined the evidence was not relevant under ER 403 and excluded it.

At trial, both A.K. and A.C. testified against Mr. Roetger. Mr. Roetger testified, denying the allegations and challenging A.K. and A.C.'s credibility. A.K.'s mother testified for the defense.

During closing and rebuttal argument, the prosecutor partly argued:

> Those are the incidents. You find any one of those happened, any one of those two beyond a reasonable doubt, then he is guilty. They both happened. He is guilty of molesting [A.C.].
>
> ...
>
> The simple fact is she didn't make this up. It happened to her at the hands of the defendant. The defendant repeatedly violated her, over and over and over. For that, he should be held responsible. For that, he is guilty of all seven counts and the aggravators.

RP at 403, 409. Later the prosecutor added:

> Somebody is uncredible [sic] here. It is the defendant and his wife, the stories you heard from them. They are just that, stories.
>
> ....
>
> You judge credibility. Look at how they testified. What you saw from [A.K.] was real emotion that was not faked. She was giving you the real story. It was emotional for her. She had problems getting it out. That was real. You looked at [A.C.]. When [A.C.] was testifying, defense counsel was standing in a manner that made her eyesight go to the defendant. She was in fear. She asked him to move for that reason so she didn't have to look over there. That is real fear. That is not something that is faked.

RP at 436, 438–39. Later, the prosecutor argued:

> Oh, I think [A.K.] is getting it smacked right in her face. [A.K.] understands exactly the reality of her situation. Her mom has basically disowned her as a result of this. Counsel said, well, one of the things, one of the things he pointed out is sometimes kids make this up so that mommy will kick daddy out of the house. Well, that's not what happened here. This came to light and [A.K.] got the boot right away. [A.K.'s mom] wasn't even truthful about what happened there on the stand. Trying to make herself look better. We will get to that.

RP at 439–40. The prosecutor continued:

> The stories [A.K. and A.C.] give you are consistent. They are consistent in that it happened. These acts happened. The defendant is living a nightmare for three years. He raped and molested two girls. They have lived with that since they were children. I don't care about his nightmare. Neither should you.

RP at 441. Defense counsel objected to the comment about not caring about Mr. Roetger's nightmare as inflaming the jury. The court sustained the objection. Next, the prosecutor stated:

> This is not embellishment. This is what happened to her. That's what she's telling you.
>
> ....
>
> Now, I have no doubt at some point [Mr. Roetger] did that when they learned to swim. That's not what was happening on these occasions.
>
> ....
>
> Obviously [Mr. Roetger] didn't have that conversation with her. If it truly happened like he said it did, then you would tell the mom. He didn't. Because it didn't happen that way.

RP at 442, 446, 448. While discussing A.K.'s mother's testimony, the prosecutor discussed the mother claiming she still had a relationship with A.K. but then retracting that statement:

> ....
>
> She's doing that to make herself look good. That is the only reason she did that. No point was that the truth. No point was she truthful here on the stand.

RP at 449. Defense counsel objected based on comment on the credibility of a witness. The court sustained the objection. Lastly, the prosecutor stated:

> The defendant is guilty. There is no reason why [A.C.] and A.K.] would ever go through all of this to make it up. What they told you was what happened to them. [A.K.] was systematically, and over the course of years, sexually abused by that defendant. That is what happened. If you believe them, if you believe what they told you on the stand, the defendant is guilty. What they told you was the truth. What they told you happened. The defendant is guilty. That is reasonable doubt. That is all I have to

        prove. I don't have to get everything defense counsel says. Oh, well, maybe I could have gotten medical records. That is not what reasonable doubt is. Reasonable doubt is your belief in truth of charges. When you listen to [A.K.], when you listen to [A.C.], what they are telling you is what happened to them.

RP at 451–52.

        The jury found Mr. Roetger guilty of one count of first degree rape of a child (A.K.), one count of second degree rape of a child (A.K.), one count of third degree rape of a child (A.K.) and two counts of first degree child molestation (A.K. and A.C.). The jury found Mr. Roetger not guilty of the remaining counts.

Dkt. 21-1, pp. 19-21; *State v. Roetger*, 189 Wash. App. 1045 at *1-3 (2015). On March 28, 2014, Petitioner was sentenced to 318 months to life imprisonment. Dkt. 21-1, p. 8.

    B. <u>Procedural Background</u>

        1.  *Direct Appeal*

Petitioner challenged his Pierce County Superior Court convictions and sentence on direct appeal. *See* Dkt. 21-1, pp. 26-49, 87-94. The state court of appeals affirmed Petitioner's convictions and sentence. *Id*. at pp. 19-24. Petitioner sought discretionary review by the Washington State Supreme Court ("state supreme court"). *Id*. at pp. 96-131. On March 2, 2016, the state supreme court denied Petitioner's petition for review without comment. *Id*. at p. 133.

        2.  *Personal Restraint Petition*

On May 4, 2017, Petitioner filed a personal restraint petition ("PRP") seeking state post-conviction relief. *See* Dkt. 21-1, pp. 135-61. The state court of appeals dismissed the PRP on May 25, 2018. *Id*. at pp. 163-64. Petitioner sought discretionary review from the state supreme court. *Id*. at pp. 166-91. The motion for discretionary review was denied by the deputy commissioner of the state supreme court on September 25, 2018. *Id*. at pp. 193-95. The state court of appeals issued the certificate of finality on November 27, 2018. *Id*. at p. 197.

3. *Federal Petition*

On October 24, 2018, Petitioner initiated this case. Dkt. 1. Petitioner was granted leave to file an amended petition and, in his Amended Petition (Dkt. 19), Petitioner raises the following two grounds for relief:

1. Appellate counsel provided ineffective assistance by failing to preserve a *federal* prosecutorial misconduct claim ("Ground 1"); and
2. Trial counsel provided ineffective assistance when counsel failed to object to the prosecutor's statements during closing argument ("Ground 2").

On July 3, 2019, Respondent filed, and served on Petitioner, an Answer. Dkt. 20, 21. In the Answer, Respondent argues the state court's adjudication of Grounds 1 and 2 was not contrary to, or an unreasonable application of, clearly established federal law. Dkt. 20. Petitioner filed a Response to the Answer on August 1, 2019. Dkt. 22.

**II.    Discussion**

A. <u>Standard of Review</u>

Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court decisions under §2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

B. <u>Ineffective Assistance of Trial Counsel (Ground 2)</u>

In Ground 2, Petitioner alleges he received ineffective assistance of trial counsel when his trial counsel failed to object to statements made by the prosecutor during closing arguments. Dkt. 19.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a defendant must demonstrate his attorney's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by

the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id.*

Under the first prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted).

Under the prejudice prong, a petitioner must establish there is a reasonable probability the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986); *Strickland,* 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In determining Petitioner's trial counsel was not ineffective for failing object to certain statements during the prosecutor's closing argument, the state court of appeals applied the *Strickland* standard. *See* Dkt. 21-1, p. 23. The state court of appeals found Petitioner had not shown ineffective assistance of counsel, stating:

> . . . Mr. Roetger contends his attorney provided ineffective assistance of counsel by failing to object to the prosecutor's remarks during closing argument. To establish ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the performance prejudiced the defendant's case. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness, *Stenson,* 132 Wn.2d at 705–06. To satisfy the prejudice prong, a defendant must show a "reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. McFarland,* 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).
>
> We strongly presume counsel provided effective assistance. *State v. Tilton,* 149 Wn.2d 775, 784, 72 P.3d 735 (2003). To rebut this presumption, a defendant

bears the burden of establishing the absence of any "'conceivable legitimate tactic explaining counsel's performance." ' (sic) *State v. Grier,* 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Reic hen bach,* 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). Here, Mr. Roetger has not shown defense counsel lacked any conceivable and legitimate reason not to object or that if his attorney had objected to the 10 remarks during closing argument, the result of the trial would have been different.

*Id*.; *Roetger*, 189 Wash. App. 1045 at *6.

Petitioner argues his trial counsel was deficient for failing to ask for curative instructions during the prosecutor's closing argument and for failing to object to several of the prosecutor's comments. Dkt. 19.

Immediately before closing arguments, the trial court instructed the jury that the jurors were the "sole judges of the credibility of each witness" and the "lawyers' remarks, statements, and arguments [were] intended to help [the jury] understand the evidence and apply the law . . . however, . . . the lawyer's statements [were] not evidence." Dkt. 21-1, p. 266; *see also* Dkt. 21-1, p. 207. The trial court also instructed the jurors to "disregard any remark, statement, or argument that [was] not supported by the evidence or the law[.]"*Id*. at 266.

During closing arguments, Petitioner's trial counsel objected to two of the prosecutor's statements and the objections were sustained. *See* Dkt. 21-1, pp. 251, 259. First, Petitioner's trial counsel objected to the prosecutor's comment that the jury should not care that Petitioner was "living a nightmare" because the statement was inflammatory. *Id*. at p. 251. This objection was sustained; however, no curative jury instruction followed. *Id*. Second, Petitioner's trial counsel also objected to the prosecutor's comment that Petitioner's wife was not truthful on the stand as it was a comment on the credibility of the witness. *Id*. at p. 259. The trial court again sustained the objection, but did not provide a curative instruction to the jury. *Id*.

1        The prosecutor made several additional comments regarding the truthfulness of the witnesses, which were summarized by the state court of appeals as follows:

> The prosecutor commented, "He is guilty of molesting [A.C.]....[A.K.] didn't make this up.... Somebody is uncredible [sic] here.... You judge credibility. Look at how they testified. What you saw from [A.K.] was real emotion that was not faked. She was giving you the real story.... This came to light and [A.K.] got the boot right away. [A.K.'s mom] wasn't even truthful about what happened there on the stand.... The stories [A.K. and A.C.] give you are consistent. They are consistent in that it happened. These acts happened.... This is not embellishment. This is what happened to [A.K.].... There is no reason why [A.C.] and [A.K.] would ever go through all of this to make it up."

Dkt. 21-1, p. 22; *Roetger*, 189 Wash. App. 1045 at * 5. Petitioner's trial counsel did not object to these statements. *See* Dkt. 19, Dkt. 21-1, pp. 397-409, 435-52.

       "Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct." *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993), *as amended on denial of reh'g* (Apr. 15, 1993). Attorneys commonly refrain from objecting during closing to avoid highlighting the remarks of the opposition. *Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013). Here, trial counsel objected to two statements made by the prosecutor, which indicates Petitioner's trial counsel made strategic decisions regarding which comments warranted objections. Petitioner has not shown, nor does the Court find, trial counsel's failure to object or ask for curative instructions during closing arguments was outside professional legal conduct. *See Necoechea*, 986 F.2d at 1281 (finding counsel was not deficient for failing to object to prosecutor's witness vouching statements); *United States v. Molina*, 934 F.2d 1440, 1448 (9th Cir. 1991) ("From a strategic perspective, for example, many trial lawyers refrain from objecting during closing

argument to all but the most egregious misstatements by opposing counsel on the theory that the jury may construe their objections to be a sign of desperation or hyper-technicality.").

Furthermore, Petitioner has not shown he was prejudiced by trial counsel's decision to not object to statements made during the prosecutor's closing argument. The trial court provided instructions to the jury to consider only the evidence and that the lawyers' remarks were not evidence. The trial court also instructed the jury that the jurors were the sole judges of credibility. Petitioner fails to cite to any evidence showing the jurors failed to follow the trial court's instructions and that the outcome of the trial would have differed had Petitioner's counsel requested curative instructions, a mistrial, or objected to more of the prosecutor's comments. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (jury is generally presumed to follow the instructions it is given); *Linebaugh v. Belleque*, 385 F. App'x 751, 753 (9th Cir. 2010) (finding the petitioner was not prejudiced by his trial counsel's failure to object to the prosecutor's statements during closing regarding the credibility of a witness, in light of the petitioner's counsel's strong closing argument and the trial court's instruction to the jury that closing arguments are not evidence).

Petitioner has not shown the state court's conclusion that Petitioner's trial counsel did not render ineffective assistance by failing to object or request curative instructions during the prosecutor's closing argument was contrary to, or an unreasonable application of, clearly established federal law, or was an unreasonable determination of the facts in light of the evidence presented at trial. Therefore, the Court recommends Ground 2 be denied.

C. Ineffective Assistance of Appellate Counsel (Ground 1)

In Ground 1, Petitioner alleges his appellate counsel was ineffective when he failed to preserve a federal prosecutorial misconduct claim on appeal. *See* Dkt. 19.

Claims of ineffective assistance of counsel on appeal are reviewed under a deferential standard similar to that established for trial counsel ineffectiveness in *Strickland*. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Smith v. Murray*, 477 U.S. 527, 535 (1986). Under this standard, a petitioner challenging his appellate counsel's performance must demonstrate (1) counsel's performance was unreasonable, which in the appellate context requires a showing counsel acted unreasonably in failing to discover and brief a meritorious issue, and (2) there is a reasonable probability, but for counsel's failure to raise the issue, the petitioner would have prevailed on his appeal. *Robbins*, 528 U.S. at 285–86; *see also Wildman v. Johnson*, 261 F.3d 832, 841–42 (9th Cir. 2001); *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992), *cert. denied*, 508 U.S. 920 (1993); *Miller v. Keeney*, 882 F.2d 1428, 1433–34 (9th Cir. 1989).

The presumption of reasonableness is even stronger for appellate counsel because he has wider discretion than trial counsel in weeding out weaker issues; doing so is widely recognized as one of the hallmarks of effective appellate assistance. *Miller*, 882 F.2d at 1434. The exercise of professional judgment in framing appellate issues makes it difficult to demonstrate counsel's omission of a particular argument was deficient performance. *Robbins*, 528 U.S. at 288. Habeas relief is unavailable on a claim of appellate-counsel ineffectiveness unless the state court's denial of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

In determining Petitioner's appellate counsel was not ineffective for failing to preserve a federal prosecutorial misconduct claim on appeal, the state supreme court found Petitioner's appellate counsel was not deficient, stating:

> Here, Mr. Roetger argues that although appellate counsel raised the prosecutorial misconduct claim on direct appeal, he failed to argue a federal basis for the claim.

> But this is just a restatement of the previous ground with a different legal argument. Still fundamentally at issue is whether the prosecutor committed reversible misconduct. Moreover, appellate counsel clearly raised the claim on direct appeal. Mr. Roetger fails to demonstrate any prejudice in failing to cite federal authority for the same contentions.

Dkt. 21-1, pp. 194-95.

Here, Petitioner alleges his appellate counsel was ineffective for failing to preserve a federal prosecutorial misconduct claim on appeal. Dkt. 19. The Court notes Petitioner does not raise a prosecutorial misconduct claim in the Amended Petition. *See* Dkt. 19.[1] Thus, the claim before the Court is whether Petitioner's appellate counsel was ineffective for failing to preserve a federal prosecutorial misconduct claim on appeal, not whether prosecutorial misconduct occurred.

On direct appeal, Petitioner's appellate counsel raised a prosecutorial misconduct claim based on the prosecutor's remarks during closing argument. Dkt. 21-1, pp. 27, 29, 30, 38-44. Petitioner's appellate counsel did not explicitly state he was raising a federal prosecutorial misconduct claim. However, in the briefing on direct appeal, Petitioner's appellate counsel cited federal case law and cited case law referencing the Sixth and Fourteenth Amendments to the United States Constitution when asserting the prosecutor's alleged misconduct violated Petitioner's right to a fair trial. *Id*. at pp. 38-44. The record shows Petitioner's appellate counsel alleged a violation of a federal constitutional right to a fair trial as a result of prosecutorial misconduct on direct appeal. Thus, Petitioner has not shown appellate counsel failed to preserve a federal prosecutorial misconduct claim on appeal. *See e.g. Merritt v. Estelle*, 935 F.2d 274 (9th

---

[1] While Petitioner initially alleged prosecutorial misconduct, he moved to amend his Petition to proceed without a prosecutorial misconduct claim. *See* Dkt. 5, 17, 18, 19. As Petitioner had an opportunity to raise the prosecutorial misconduct claim, yet declined to do so, the Court will not consider whether the state court's finding that there was no prosecutorial misconduct was not contrary to, or an unreasonable application of, clearly established federal law.

REPORT AND RECOMMENDATION - 13

1 | Cir. 1991) (for exhaustion, "[a] claim is fairly presented if the petitioner has described the

2 | operative facts and legal theory on which his claim is based."); *Middleton v. Cupp*, 768 F.2d

3 | 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state Supreme Court

4 | even though the state court did not reach the argument on the merits). Therefore, Petitioner has

5 | not shown appellate counsel's performance was deficient.

6 |      Furthermore, Petitioner has not shown how he was prejudiced by any alleged failure to

7 | preserve the prosecutorial misconduct claim as a federal claim. *See* Dkt. 19. In Petitioner's

8 | supplemental brief filed on direct appeal, Petitioner asserted his constitutional rights under the

9 | U.S. Constitution had been violated as a result of prosecutorial misconduct. *See id*. at pp. 91-92.

10 | Additionally, Petitioner has not shown he has been denied the ability to raise a federal

11 | prosecutorial misconduct claim because it was not properly preserved on direct appeal. *See* Dkt.

12 | 17, 19 (removing prosecutorial misconduct from Amended Petition prior to Court's decision);

13 | Dkt. 21-1, p. 167 (failing to raise prosecutorial misconduct in PRP). Petitioner has also not

14 | shown his direct appeal or a subsequent collateral attack would have resulted in a different result

15 | had his counsel raised the prosecutorial misconduct claim differently. For example, Petitioner

16 | has not shown the state court would have granted Petitioner a new trial had the claim been raised

17 | differently on direct appeal.

18 |      Petitioner's appellate counsel raised a violation of Petitioner's right to a fair trial due to

19 | prosecutorial misconduct and referenced federal law. Further, Petitioner has not shown he was

20 | prejudiced by the alleged failure to preserve a federal prosecutorial misconduct claim. Therefore,

21 | Petitioner has not shown the state court's conclusion that appellate counsel did not render

22 | ineffective assistance by failing to preserve a federal prosecutorial misconduct claim on appeal

23 | was contrary to, or an unreasonable application of, clearly established federal law, or was an

24 |

unreasonable determination of the facts in light of the evidence presented at trial. Therefore, the Court recommends Ground 1 be denied.

### III. Evidentiary Hearing

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. The Court finds it is not necessary to hold an evidentiary hearing in this case because, as discussed in this Report and Recommendation, the grounds raised in the Petition may be resolved on the existing state court record.

### IV. Certificate of Appealability

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement

to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or would conclude the issues presented in the Petition should proceed further. Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

V.      **Conclusion**

For the above stated reasons, the Court finds Grounds 1 and 2 of the Petition should be denied as Petitioner has not shown the state courts' adjudication of these grounds was contrary to, or an unreasonable application of, clearly established federal law. The Court also finds an evidentiary hearing is not necessary. Accordingly, the Court recommends the Petition be denied and a certificate of appealability not be issued.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on September 20, 2019, as noted in the caption.

Dated this 30th day of August, 2019.

David W. Christel
United States Magistrate Judge